The defendants, after having been sentenced to the penitentiary on their pleas of guilty to a charge of grand larceny, filed motions (1) to set aside their sentence and to withdraw their plea of guilty, and (2) for a new trial. Both motions were overruled, to which rulings the defendants did not reserve bills of exception. There being no bills of exception to be reviewed by us and no error patent on the face of the record, the judgment therefore must be affirmed.

Judgment affirmed.

## COOPER v. KENNARD et al.

### No. 2041.

Court of Appeal of Louisiana. First Circuit.

Dec. 20, 1939.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

Fred G. Benton and C. G. Spaht, both of Baton Rouge, for appellee.

DORE, Judge.

This is a suit for personal injuries sustained by plaintiff on the night of April 20, 1938, at about 7:45 P. M., at the settlement of Scotlandville, a few miles north of Baton Rouge, as a result of being struck by the trailer of a truck. Plaintiff alleges that he was walking towards the north on the shoulder of the paved highway on the path ordinarily used by pedestrians; that the truck and trailer of defendant, Kennard, was being driven during rainy weather through Scotlandville, a thickly settled community, going south, at a rate of speed of at least forty-five miles per hour; that the driver of the truck negligently caused the trailer of the truck to strike him, resulting in the injuries for which he claims damages in the sum of

$6,703, against the owner of the truck and trailer, Kennard, and his insurer.

The defense is to the effect that, while it is admitted that defendant Kennard's truck passed through Scotlandville at about the time of the accident, the defendant's truck driver was not guilty of any negligence; that he was driving at a reasonable rate of speed and keeping a proper watch on the road; that neither he, nor his assistant, who was sitting beside him in the truck, have any knowledge of striking plaintiff. In the alternative, and in the event that defendant's truck be identified as the one which struck plaintiff and it be found that the driver thereof was guilty of negligence, defendants plead that plaintiff was guilty of contributory negligence.

Upon hearing of the case, the lower court rendered judgment in favor of the plaintiff and against the defendants, in the sum of $1,903, consisting of allowances of $150 for medical attention, $53 for hospital expense, $500 for pain and suffering, and $1200 for physical injuries. The defendants have appealed. Plaintiff has answered the appeal, praying that the judgment be increased to the amount originally demanded.

There is no doubt that the plaintiff was struck by a truck or the trailer of a truck on the night of April 20, 1938, at about 7:45 P. M., at Scotlandville, a thickly settled community, and suffered certain injuries as a result thereof.

The principal questions presented in the case are: (1) Did defendant's truck or trailer strike plaintiff? (2) If so, was negligence on the part of the driver of the truck the cause thereof? (3) Was plaintiff guilty of negligence which contributed to the accident? (4) If plaintiff's injuries resulted from being struck by defendant's truck or trailer, through the negligence of the truck driver and not through any negligence of the plaintiff, what is the measure of damages?

The situs of the accident was on the west side of the paved highway which runs through Scotlandville at a point a short distance north of the Scott Bluff Mortician's Home located on the east side of the highway, and a short distance south of the home of Willie Jackson located on the west side of the highway. It is shown that the pavement of the highway is eighteen feet wide and there are dirt shoulders on both sides about five to six feet wide which are used by pedestrians; that the shoulder on the west side has a well defined path some two or three feet from the pavement which is customarily used by pedestrians.

The plaintiff, Cooper, testifies that shortly before the accident he crossed the highway, from his home on the east side of the highway and south of the mortician's home, to the west side of the highway, with the expressed purpose of going to the barber shop located on the west side of the highway, north of the Jackson home. He states that upon crossing the highway, he started walking northward on the west shoulder of the highway and that after he had walked a short distance a truck coming from the north and going south passed him and suddenly "it hit him"..

Five persons have testified that they saw the accident; two of whom state that they were standing on the porch of the Jackson home, two on the porch of the mortician's establishment, and one across the street from the Jackson home.

The witness who was across the street from the Jackson home, Ola Mae Thomas, testifies that immediately after the accident she called out to Bell, one of the witnesses who was standing in front of the mortician's home, to stop the truck, which had continued on its way. Bell and Waller, the other witness who was standing in front of the mortician's home, saw the truck pass right after the accident, and that they clearly saw that the cab was green in color, with the name "Kennard", the number 10 and the telephone number printed on the door. It is admitted that these are identification marks of the defendant's truck, and it appears clear that they were discernible as the truck passed in the light of the neon sign in front of the mortician's home. These witnesses testify further that they immediately jumped into a Ford car, parked in the driveway on the south side of the mortician's home and facing onto the highway, and followed the truck; that the truck never got out of their sight until after they had overtaken it and halted it some three or four miles down the road. Bell states that after they had halted the truck, he got out of the Ford and told the driver of the truck that he had hit a man in Scotlandville, whereupon the driver denied any knowledge of striking anyone. These two witnesses testify further that no other truck passed them going south during their pursuit. Several witnesses testified that no other truck passed the

point of the accident for several minutes after plaintiff was struck, and there is no testimony to the contrary. It is true that the truck driver and his companion testified that a truck and trailer overtook and passed them going at a rapid rate of speed a little less than a mile beyond Scotland-ville, and still another passed them further down the road and before the pursuing car overtook them. But unless we disbelieve altogether the two witnesses who started in pursuit right after the accident and who say that the truck never got out of their sight, and unless we disbelieve the other witnesses at the scene of the accident, we must conclude, as did the trial judge, that defendant Kennard's truck trailer struck the plaintiff.

While there may be some slight discrepancies in the testimony with reference to some of the details of the identification of defendant's truck, such as with reference to the license number thereof, and as to whether the trailer was flat and platform-like, or had sides on it as shown in the pictures of the Kennard truck introduced in evidence, we feel that a decided preponderance of the evidence supports the findings of the lower court that defendant's truck has been identified as the one which struck the plaintiff.

We come next to the question as to whether or not the accident was caused by the negligence of the truck driver. We have seen that the plaintiff testified that he was walking on the west shoulder of the highway, on his way to the barber shop also on the west side of the highway, when he was struck. His testimony in that respect is corroborated by the five eye witnesses to the accident. All of these witnesses testify that the plaintiff was on the shoulder of the highway immediately before being struck, and estimate the spot where he stood at from one and one-half to three feet from the pavement. While it does not appear that any of these witnesses was in a position to actually see the plaintiff at the very moment he was struck, their testimony appears sufficient to justify the conclusion that plaintiff had not deviated from his course to the barber shop during the second or two when he was probably hidden from their sight. Moreover, it is testified by two of these witnesses that, immediately after the accident, they picked up the injured plaintiff who was lying down parallel to the pavement about three feet therefrom, with his head to the south.

The driver of the truck and his assistant testify that the truck was being driven at a reasonable rate of speed; that they were keeping a close watch on the highway, and saw no one on the pavement; that they are unaware of having struck plaintiff. It is shown that it was misting rain on the night of the accident, and there is no testimony of tire tracks on the wet shoulder at the scene of the accident, or any other testimony to show that the truck actually got off of the pavement. It is shown, however, that the defendant's truck trailer is twenty feet long by eight feet wide and extends about two feet beyond the tread of the wheels, and it is apparent that a person standing on the dirt shoulder, at a distance of one foot and one-half or a little more from the pavement, could be struck by this trailer without the wheels of the truck or trailer leaving the pavement. It is reasonable to believe, also, since the truck and trailer combined were over thirty feet long, that the driver and his assistant could very likely be unaware of striking a person with the rear of the trailer on the right side of the road, as they were not required to be looking in the rear on that side of the trailer.

From the above considerations, it appears to us that Ola Mae Thomas, one of the eye witnesses to the accident, correctly stated what happened, when she testified: "The truck came along—it undoubtedly must have been running somewhat close to the shoulder of the road—and when they got along side of Cooper, the driver must have noticed, and he swayed the truck, the truck swayed and the back of the trailer hit Cooper."

From the evidence discussed, we are convinced that the plaintiff was on the shoulder of the highway, probably one foot and a half or a little more away from the pavement, when he was struck. He had the right to be there and therefore was not guilty of negligence which contributed to the accident. On the other hand, it was the duty of the truck driver in driving through this thickly settled community to keep his truck, including the protruding body of the trailer onto the paved highway, and it is our opinion that plaintiff's accident and resultant injuries were caused by the truck driver's negligence in failing to do so.

With reference to the quantum of damages, we find from the testimony of plaintiff's attending physician, Dr. Baran-

co, that plaintiff suffered a severe injury on his right arm, contusions to his left shoulder, to both sides of his chest, to the abdomen and to both knees, and to the lower left leg, and a fracture to his left ankle joint, and considerable shock. Dr. Baranco testifies that he treated plaintiff from the date of the accident, April 20, 1938, to about the second week in August, 1938, and that plaintiff is now well—in fact has gained weight—but that he will always have some trouble with his left ankle, such as swelling and pain, when he takes unusual exercise. It is shown that the total doctor's bill was $150 and the hospital bill $53, both of which items correctly were allowed in full by the trial court. We realize that plaintiff must have undergone considerable pain at the time of the accident and for some days thereafter, and inconvenience for a few months when he had to get around on crutches. We also realize that his slightly injured ankle may occasion him pain and inconvenience at rare intervals, in his business as undertaker's assistant. However, we feel that the allowance of $1700 for his pain and suffering and injuries is reasonable, and we cannot find any reason for disturbing the estimate for these items made by the trial judge who had the advantage over us of seeing and observing the plaintiff.

For the reasons assigned, the judgment is affirmed.